UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO SANDOVAL,<br><br>             Plaintiff,<br><br>      v.<br><br>M. LOPEZ, et al.,<br><br>             Defendants. | Case No.: 1:23-cv-00248-JLT-SKO (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>(Doc. 24)<br><br>**14-DAY OBJECTION PERIOD** |

Plaintiff Julio Sandoval is proceeding pro se in this civil rights action brought pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's s Eighth Amendment deliberate indifference to serious medical needs claims and failure to protect/threat to safety claims against Defendants Andrade, Cerillo, Felix, Lopez, Miguel, Perez, and William.

**I.      PROCEDURAL BACKGROUND**

On May 29, 2024, Defendants filed a motion to dismiss Plaintiff's first amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 24.)

On June 12, 2024, Plaintiff filed a document titled "Request for extension of time to submit Opposition to Defendants Answer to plaintiff's complaint." (Doc. 25.) The following day, the Court issued its "Order Granting Plaintiff's Request for an Extension of Time Within Which to Oppose the Motion to Dismiss." (Doc. 26.) Plaintiff was directed to file his opposition no later than August 19, 2024. (*Id*. at 2.)  Plaintiff filed an opposition to Defendants' motion to dismiss on

August 12, 2024. (Doc. 31.) Defendants replied on August 22, 2024. (Doc. 32.)

On September 20, 2024, Plaintiff filed a document titled "Motion for Clarification and Verification," and on September 23, 2024, he filed a duplicate of that motion. (Docs. 33, 34.) On September 30, 2024, Plaintiff filed a document titled "Request for Extension of Time to Submit Motion for Objection and Plaintiff's Reply to Defendants' Opposition to Motion to Dismiss Plaintiff's First Amended Complaint." (Doc. 35.)

On October 8, 2024, the Court issued its "Order Regarding Plaintiff's Motions for Clarification and Motion for Extension of Time; Order Denying Request for the Appointment of Counsel." (Doc. 37.) The Court denied Plaintiff's request for an extension of time within which to file a sur-reply to address "false facts" and "false arguments." (*Id*. at 7.)

On October 21, 2024, Plaintiff filed a "Notice of Appeal and Plaintiff Requesting to Reply to False New Evidence and to Refute Such Errors." (Doc. 38; *see also* Doc. 39.) On November 25, 2024, the Ninth Circuit Court of Appeals dismissed the appeal for a lack of jurisdiction. (Doc. 42.)

## II.    PLAINTIFF'S ALLEGATIONS

At screening, the Court summarized the factual allegations in Plaintiff's first amended complaint:

> **B. Factual Allegations**
>
> On November 28, 2020, while housed at SATF, Plaintiff suffered from COVID-19 without medical treatment, having been told to drink water and get lots of sleep. Plaintiff had sought assistance the previous day, filing a health care grievance form and a reasonable accommodation form, asking for medications for cough and congestion. The requests were denied despite his difficulty breathing.
>
> On March 4, 2021, Plaintiff again sought medical treatment because the pain had increased, and he was having difficulty breathing. He contends both forms submitted were ignored, and he "had to call for medical emergency" on March 8, 2021. When Defendants Miguel, William, Felix and Andrade responded, Plaintiff asserts he specifically told Defendants Miguel and William he was having trouble breathing, that his chest was "burning and on fire" and that he needed "to go man down." Miguel and William stated, "pill call" was being conducted and that Plaintiff should "walk over there to medical," denying Plaintiff medical treatment. He asserts Defendants Felix and Andrade "were aware of the situation" but did nothing.

2

Plaintiff alleges he "walked to the bench in pain sat down and yelled numerous of times while in pain, coughing, Man down! Man down! (medical emergency) very loud." Plaintiff contends he observed Defendant Miguel "tell the tower no, not to call man down." Plaintiff states that Defendant Lopez then became "aware Plaintiff needs medical attention that consist of medical emergency call by [Plaintiff] was denied." Plaintiff asserts he continued yelling. Defendant Miguel advised Defendant Lopez to ignore Plaintiff and not to call a medical emergency. Plaintiff asserts he "could see" Miguel advising Lopez "in front of" Defendants William and Felix. Plaintiff alleges "all Defendants" were aware of the emergency but refused to provide medical care. Plaintiff contends Defendant Miguel angrily asked, "'Why don't you walk your F*n ass to medical.'" Plaintiff asserts he "walked in shame, in shock and in severe pain to the medical center," and advised Defendants Cerillo and Perez he was having trouble breathing and his chest hurt. They ignored Plaintiff's request "to go man down," and told him: "'We are doing pill call we're not going to stop that for you.'" Plaintiff contends Defendants Cerillo and Perez were aware of his medical need and ignored him. Defendant Cerillo told Plaintiff "'we're not medical staff'" and indicated Plaintiff should ask nearby nurses for assistance. Plaintiff states his medical emergency call was deliberately ignored and "met with hostility" by Defendants Miguel, Williams, Lopez, Felix, Andrade, Cerillo and Perez. During his interactions with these Defendants, Plaintiff was in severe pain, holding his side and chest, coughing, and having difficulty breathing. Plaintiff contends they deliberately ignored his medical needs, and that Defendants Felix and Andrade were laughing. Plaintiff contends Defendants' actions were a substantial factor in furthering his unnecessary and wanton pain.

On March 9, 2021, Plaintiff asserts he continued to suffer pain, burning in his lungs and difficulty breathing. Defendant Miguel taunted Plaintiff that morning, stating "'you don't got no medical issues today.'" When Plaintiff replied, "'Not like if you care,'" Miguel stated, "'Don't be playing your stupid games!'" Plaintiff alleges that "hostility and refusal" to provide care "was very inadequate" and violated his constitutional rights.

Plaintiff contends all Defendants have "gone through some training in California Department of Health Care Services," including the Emergency Medical Response System ("EMRS"). Despite that training, the Defendants refused to activate EMRS for Plaintiff and he was "met with numerous acts of hostility, duress" causing him harm. Plaintiff contends he suffered unnecessary and wanton infliction of pain by Defendants' refusal to activate EMRS and for ignoring Plaintiff's need for four days.

On March 12, 2021, Plaintiff was transported to the hospital "with swollen lungs, causing severe pain as Plaintiff was shaking in pain." During a CAT scan, Plaintiff "was shaking so much the doctor/nurses had to take it over" because simply lying on his back "caused lung pain/chest pains."

Plaintiff contends that as a result of Defendants' refusal to activate

> EMRS, he has suffered permanent damage, including respiratory issues, waking at night due to cough, acid reflux "causing chocking and scaring" on his lungs, and low oxygen levels "for life lowering Plaintiff's normal activity capability to do certain activities."

(Doc. 17 at 5-7, citations omitted.) Regarding Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims against Defendants, the Court found:

> Liberally construing the first amended complaint, Plaintiff plausibly alleges deliberate indifference to serious medical needs claims against Defendants Andrade, Cerillo, Felix, Lopez, Miguel, Perez and William. Plaintiff alleges he suffered from COVID-19, was in severe pain and having difficulty breathing, meeting the first prong of the deliberate indifference test. *Colwell*, 763 F.3d at 1066. Plaintiff next alleges facts indicating all Defendants were aware Plaintiff faced a substantial risk of serious harm and each Defendant disregarded that risk by failing to take reasonable measures to abate it, causing Plaintiff harm. *Farmer*, 511 U.S. at 847; *Wilhelm*, 680 F.3d at 1122.

(*Id*. at 8-9.) regarding Plaintiff's threat to safety/failure to protect claims against Defendants, the Court found:

> Liberally construing the first amended complaint, Plaintiff plausibly alleges Eighth Amendment threat to safety/failure to protect claims against Defendants Andrade, Cerillo, Felix, Lopez, Miguel, Perez and William. Plaintiff contends they were deliberately indifferent to his risk of substantial harm by refusing to activate the EMRS system even though he advised them of the need for medical treatment to treat his severe chest pain and difficulties breathing. This resulted in Plaintiff suffering unnecessary and wanton infliction of pain. *Farmer*, 511 U.S. at 837, 847; *Wilson*, 501 U.S. at 297.

(*Id.* at 10.)

### III. SUMMARY OF THE PARTIES' BRIEFING

***Defendants' Motion to Dismiss (Doc. 24)***

Defendants contend Plaintiff fails to state Eighth Amendment deliberate indifference claims against them because they immediately sent him to on-site medical staff. Defendants Miguel and William, as well as Defendants Andrade and Felix, verbally responded to Plaintiff's request for medical care because he was having difficulty breathing, and told him to walk to medical. Plaintiff complied. When he encountered Defendants Cerillo and Perez near onsite medical, Plaintiff told them he needed "to go man down." Cerillo and Perez advised Plaintiff to approach nearby nursing staff. Plaintiff did so and "received a lung x-ray" that same day that

1  revealed no abnormalities.

2  Defendants assert Plaintiff does not claim he was denied medical care, but that Defendants

3  denied him a specific form of medical care: an emergency response and immediate transport to an

4  outside hospital. Defendants contend they "had no duty—and no authority—to interfere in the

5  care that medical staff deems appropriate." Defendants also assert that while Plaintiff alleges he

6  was in severe pain as he walked to onsite medical care, "he also pleads that severe pain was one

7  of the symptoms that caused him to seek medical care in the first place." They maintain their

8  instruction neither caused nor contributed to Plaintiff's condition or outcome and that Plaintiff

9  failed to plead facts showing their conduct "was a but-for, still less than proximate, cause" of

10 Plaintiff's lung condition. Defendants state that Plaintiff's belief that a "more dramatic response

11 was necessary" or their use of "harsh language" does not amount to deliberate indifference.

12 Alternatively, Defendants contend they are entitled to qualified immunity.

### *Plaintiff's Opposition (Doc. 31)*

14 Initially, the Court notes Plaintiff's opposition is 27 pages long and is supported by

15 approximately 31 pages of exhibits. Briefly stated,[1] Plaintiff contends he states viable Eighth

16 Amendment deliberate indifference to serious medical needs claims against Defendants. He states

17 he was suffering from COVID-19 and "Coccidiodomy," was in severe pain and had difficulty

18 breathing. He personally told Defendants he needed to go "man down" and was in pain. Plaintiff

19 contends Defendants receive emergency medical training for medical emergencies and should

20 have activated their alarms, but failed to do so, amounting to a delay in treatment. Plaintiff also

21 contends his need was obvious, and references an affidavit submitted by inmate Kyle Frank as an

22 exhibit to his opposition. Plaintiff contends Defendants are not entitled to qualify immunity

23 because "Defendants pattern and to act reckless by refusing medical help and activate (ERMS)

24 procedures were acts Defendants chose to do vindictively" to cause him suffering. Because

25 Defendants failed to follow emergency procedures, they violated Plaintiff's clearly established

---

[1] Plaintiff's opposition includes a number of headings not relevant to opposing the motion (*see, e.g.*, "Statement of the Case," "Introduction," "Entitled Relief," "Parties to Claims"). It also includes two separate headings entitled "Argument and Law." The Court has reviewed Plaintiff's opposition and will only address relevant information.

5

rights.

### *Defendants' Reply (Doc. 32)*

Defendants contend Plaintiff improperly asserts new facts in his opposition to their motion to dismiss.[2] Regarding qualified immunity, Defendants state Plaintiff essentially conceded the constitutional right is not clearly established by relying on broad Eighth Amendment principles and Defendants' "general duty to protect inmates, which fails to show a particularly defined right existed. Defendants therefore contend they were not on fair notice that their conduct was somehow unlawful or that existing precedent placed the constitutional question beyond debate.

**IV.     THE APPLICABLE LEGAL STANDARDS**

### *Motions to Dismiss*

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In resolving a 12(b)(6) motion, the Court's review is generally limited to the "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008) (internal quotation marks & citations omitted). Dismissal is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted). In addition, the Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir.

---

[2] Plaintiff's opposition includes the "Affidavit/Declaration of Kyle Frank #AH1177" and an "Affidavit" by Eric A. Sanchez. (*See* Doc. 21 at 31-32.) The Court does not consider affidavits in determining a motion to dismiss unless the exhibit was included with the complaint, because they are outside the four corners of Plaintiff's first amended complaint. *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997).

2010) (citation omitted). However, "the liberal pleading standard … applies only to a plaintiff's factual allegations," not his legal theories. *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989).

### *Deliberate Indifference*

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)). Deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835.

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or

safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096, citing *McGuckin*, 974 F.2d at 1060.

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see also Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

**V.   DISCUSSION**
    **A.   *Plaintiff Fails to Sufficiently Allege Defendants Acted With Deliberate Indifference***

Defendants assert Plaintiff has failed to adequately allege an Eighth Amendment deliberate indifference claims against them. Regarding the second and subjective prong of the test, Defendants contend they were not deliberately indifferent to Plaintiff's serious medical needs,[3] and instead responded to Plaintiff's assertion that he was having difficulty breathing and

---

[3] Defendants do not allege any insufficiency as to the first, objective prong of the deliberate indifference test.

8

1  needed emergency care by instructing him to go to the onsite medical clinic. Thus, the issue is
2  whether Defendants disregarded an excessive risk to Plaintiff's health. The Court also considers
3  whether any Defendant caused a delay in Plaintiff obtaining medical care.

4  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may
5  be found free from liability if they responded reasonably to the risk, even if the harm ultimately
6  was not averted. A prison official's duty under the Eighth Amendment is to ensure reasonable
7  safety, a standard that incorporates due regard for prison officials' unenviable task of keeping
8  dangerous men in safe custody under humane conditions. Whether one puts it in terms of duty or
9  deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel
10 and Unusual Punishments Clause." *Farmer*, 511 U.S. at 844-45 (internal quotations & citations
11 omitted).

12 On March 8, 2021, four days without a response to written requests for medical care to
13 treat a cough and breathing difficulties, Plaintiff's lungs still hurt and burned, causing increased
14 pain. (Doc. 16 at 3.) He believed he "had to call for medical emergency." (*Id*.) When Plaintiff
15 advised Defendants he needed "to go man down," Defendants Miguel and William advised they
16 were "'doing pill call'" and told Plaintiff to walk over to medical. (*Id*.) Defendants Felix and
17 Andrade were nearby and said "nothing so Plaintiff walked to the bench in pain and sat down and
18 yelled numerous of times while in pain, coughing, Man down! Man down!" (*Id*.) Miguel advised
19 Defendant Lopez in the tower "not to call Man down." (*Id*. at 3-4.) Plaintiff contends the
20 Defendants were aware of his need for emergency medical treatment "refusing Plaintiff and with
21 inadequate medical care (Emergency help/call) Man Down! All these Defendants failed to call for
22 help for Plaintiff." (*Id*. at 4.) When Plaintiff continued to yell, Defendant Miguel told him to walk
23 his "F*N ass to Medical." (*Id*.) Plaintiff alleges Defendants Cerillo and Perez ignored Plaintiff's
24 statement that he was having troubling breathing and experiencing chest pain, and advised him
25 they were "doing pill call." (*Id*.) Cerillo told Plaintiff he and Perez were not medical staff and
26 pointed to nursing staff, but refused Plaintiff's "Mandown call, [and his request] to go to an
27 outside Hospital." (*Id*.) Because "Plaintiff's Medical Emergency Call" was ignored and
28 Defendants failed to call "911 for help," Plaintiff contends Defendants caused him unnecessary

1    pain. (*Id.* at 4-5.) Plaintiff next contends that when he "walked to the Medical center" he was "in

2    pain suffering with sufficating [sic] sensation and chest burning really bad." (*Id*. at 5.)

3         Here, Plaintiff's first amended complaint reveals that the named Defendants responded

4    reasonably to Plaintiff's request for medical treatment by instructing Plaintiff to go to the onsite

5    medical clinic for treatment. Although Plaintiff's factual allegations indicate Defendants refused

6    to call a medical *emergency* to allow for Plaintiff's transport to an outside medical facility, his

7    allegations indicate he received onsite medical care (Plaintiff "walked to the Medical center" after

8    his interactions with Defendants), and an exhibit to his complaint confirms he was seen that same

9    date (*see* Doc. 16 at 15 [Reasonable Accommodation Panel (RAP) Response noting "A lung x-ray

10   was taken on 3/8/2021. The x-ray showed no abnormalities"]). Based on these facts, Defendants

11   did not deny medical treatment. *McGuckin*, 974 F.2d at 1062.

12        In sum, while Plaintiff did not get the response to his request for medical treatment that he

13   wanted—an alarm and transport to an outside medical facility—he was directed to the onsite

14   clinic where he was seen by medical staff. *Farmer*, 511 U.S. at 835, 844-45; *see also, e.g*.,

15   *Aguilar v. CDCR*, No. 1:23-cv-01512 JLT HBK (PC), 2024 WL 3026078, at *1 (E.D. Cal. June

16   17, 2024) (adopting recommendation to dismiss deliberate medical indifference claim against

17   correctional officer who plaintiff alleged violated policy regarding emergency care by alerting his

18   supervisor, rather than medical staff, to plaintiff's request to go man down); *Solano v. Davis*, No.

19   CV 13-01164-ODW (DFM), 2014 WL 6473651, at *8-9 (C.D. Cal. Nov. 17, 2014) (granting

20   summary judgment to deputy sheriff defendants on deliberate indifference to serious medical

21   needs claims, where plaintiff was taken to medical clinic following use of force incident, was

22   seen by nurse within an hour, and by a doctor two days later because "Plaintiff was treated

23   promptly" and defendants "played no part" in medical decisions); *Woodall v. California*, No.

24   1:08-CV-019480-OWW-DLB PC, 2011 WL 3319620, at *6-7 (E.D. Cal. Aug. 1, 2011)

25   (recommending summary judgment be granted to three defendants who did not disregard risk to

26   plaintiff presented by handcuffs, but instead took other actions to alleviate plaintiff's complaints

27   of pain despite lacking authority to remove handcuffs), *adopted* 2011 WL 4055397 (E.D. Cal.

28   Sept. 9, 2011).

Unlike *Lolli v. County of Orange*, 351 F.3d 410, 420-21 (9th Cir. 2003), where the Ninth Circuit determined that a reasonable jury could infer that correctional officers' failure to provide medical care in response to detainee Lolli's extreme behavior, sickly appearance and statements that he was diabetic and needed food demonstrated the subjective component of the deliberate indifference test, the operative first amended complaint reveals Plaintiff received care after presenting himself to onsite medical where an x-ray was taken that showed no abnormalities. *See also, e.g.*, *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1197 (9th Cir. 2002) ("Nor can we say that Gibson was so obviously mentally ill that the deputies, who received no training regarding the diagnosis and treatment of mental illness, must have known that Gibson was exhibiting symptoms of mental illness" requiring medical treatment) (overruled on another basis in *Castro v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)).

Even assuming Defendants should have escorted Plaintiff to the onsite medical clinic instead of directing Plaintiff to present himself to onsite medical staff, Defendants' conduct appears to involve nothing more than negligence which is insufficient to state a claim. *Estelle*, 429 U.S. at 106; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (gross negligence is insufficient to establish deliberate indifference to serious medical needs claim). And Plaintiff's assertions regarding the manner in which Defendants spoke to him does not establish deliberate indifference. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir.1987) (mere verbal harassment or abuse does not violate the Constitution and does not give rise to a claim for relief under section 1983); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (allegations of harassment with regards to medical problems not cognizable under section 1983).

The Court next considers Plaintiff's claim of a delay in obtaining medical treatment. "Mere delay of medical treatment, without more, is insufficient to state a claim of deliberate medical indifference." *Robinson v. Catlett*, 725 F.Supp.2d 1203, 1208 (S.D. Cal. July 19, 2012) (quoting *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)). Here, Plaintiff alleges that on March 8, 2021, at about 8:00 a.m., he was in "severe pain," had "trouble breathing in pain" and his "chest was burning and on fire." (Doc. 16 at 3.) Other than referring to 8:00 a.m., before his interaction with Defendants, Plaintiff's complaint does not

1  include any facts regarding the period between his first interaction with Defendant Miguel and
2  obtaining medical treatment at the onsite clinic. Additionally, following the interactions with
3  Defendants, Plaintiff alleges the same "severe pain" and "trouble breathing." (*Id*. at 4-5; *see also*
4  *id*. at 6 ["still is in pain"].) And Plaintiff's first amended complaint alleges the same condition
5  following his transportation to a hospital on March 12, 2021, four days after his interactions with
6  Defendants: "severe pain" in his lungs and chest. (*Id*. at 6.) Therefore, Plaintiff fails to show any
7  alleged delay by Defendants led to further injury. *Hallett*, 296 F.3d at 746.

8  Plaintiff's argument that Defendants violated prison policy by failing to activate their
9  alarms in the face of a medical emergency is unavailing. There "is no [section] 1983 liability for
10 violating prison policy. Plaintiff must prove that the official violated his constitutional right." *See*
11 *Case v. Kitsap Cty. Sheriff's Dep't*, 249 F.3d 921, 930 (9th Cir. 2001) (quoting *Gardner v.*
12 *Howard*, 109 F.3d 427, 430 (8th Cir. 1997)). Meaning even if Defendants were obligated to
13 activate an alarm, Plaintiff must still prove they were deliberately indifferent. As noted above,
14 Plaintiff has failed to establish the named Defendants were deliberately indifferent because they
15 did not ignore his requests for medical treatment but instructed Plaintiff to go to the onsite
16 medical clinic.[4]

17 Defendants also contend Plaintiff has failed to plead facts showing their conduct on March
18 8, 2021, was a but for or proximate cause of Plaintiff's lung condition. In alleging deliberate
19 indifference, plaintiffs must also plead facts that the defendants' actions were both an actual and
20 proximate cause of their injuries. *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062,
21 1074 (9th Cir. 2013). To demonstrate causation-in-fact the plaintiff must demonstrate that the
22 injury would not have occurred but for defendant's unlawful conduct. *White v. Roper*, 901 F.2d
23 1501, 1505 (9th Cir. 1990). "The proximate cause question asks whether the unlawful conduct is

---

[4] The Court is not persuaded by Defendants' citation to *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) in support of their argument that Plaintiff's belief a more "dramatic response was necessary" amounts to a mere disagreement with their "judgment" to send him to onsite medical. In *Sanchez*, the Ninth Circuit held that a difference of medical opinion by a prisoner regarding medical treatment by a physician does not amount to deliberate indifference to a prisoner's serious medical needs and does not support a section 1983 claim. *Id*. at 242. The Court has not identified a case applying *Sanchez* to the differences in judgment between a prisoner and correctional officers. Moreover, Defendants' citation to *Hunter v. Mueske*, 73 F.4th 561 (7th Cir. 2023) is not binding or persuasive.

closely enough tied to the injury that it makes sense to hold the defendant legally responsible for the injury. Proximate cause is said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible. It is a question of whether the duty includes protection against such consequences... [w]hether understood in terms of the scope of the risk or in terms of foreseeability." *Mendez v. County of Los Angeles*, 897 F.3d 1067, 1076-77 (9th Cir. 2018) (citations & internal quotation marks omitted). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Here, Plaintiff's first amended complaint fails to establish a causal connection between the named Defendants and the harm or injury alleged by Plaintiff. Plaintiff alleges he was in significant pain and was having trouble breathing, believing he was suffering from effects of having previously contracted COVID-19, before he encountered Defendants on March 8, 2021. And no facts indicate he suffered more harm or injury following those encounters. Thus, Plaintiff fails to show Defendants were the cause of his injuries. *Lemire*, 726 F.3d at 1074.

In sum, even construed in his favor, Plaintiff's factual allegations are insufficient to allege Eighth Amendment deliberate indifference claims against Defendants. *Balistreri*, 901 F.2d at 699. The Court will recommend Defendants' motion to dismiss be granted for failure to state a claim.

### B. *Qualified Immunity*

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Since this Court is recommending that Plaintiff's claims against Defendants be dismissed

for failure to state a claim, the Court will not address qualified immunity.

### C. *Plaintiff Will Be Granted Leave to Amend*

If the court finds that a complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. *Id.* at 1130-31; *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile").

Here, out of an abundance of caution,[5] this Court will recommend Plaintiff be given an opportunity to amend his complaint.

### IV. CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the Court **RECOMMENDS** that:

1. Defendants' motion to dismiss (Doc. 24) be **GRANTED**; and
2. Plaintiff be **GRANTED** leave to file a second amended complaint, within 30 days of any order adopting these Findings and Recommendations.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed fifteen (15) pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time

---

[5] Plaintiff filed his first amended complaint before the Court had an opportunity to screen his original complaint. Plaintiff has not previously been advised of any defects in a complaint.

may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

| Dated: | **December 16, 2024** | /s/ *Sheila K. Oberto* |
|---|---|---|
| | | UNITED STATES MAGISTRATE JUDGE |