UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JULIO SANDOVAL,

                Plaintiff,

      v.

M. LOPEZ, et al.,

                Defendants.

Case No.: 1:23-cv-00248 JLT SKO (PC)

**FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

(Doc. 50)

**14-DAY OBJECTION PERIOD**

Plaintiff Julio Sandoval is proceeding pro se in this civil rights action brought pursuant to 42 U.S.C. § 1983.

## I.    RELEVANT BACKGROUND

The Court issued its First Screening Order on February 21, 2024. (Doc. 17.) It determined that Plaintiff's first amended complaint stated cognizable Eighth Amendment deliberate indifference to serious medical needs and failure to protect/threat to safety claims against Defendants Andrade, Cerillo, Felix, Lopez, Miguel, Perez and William. (*Id*. at 7-10.)

Following service of process, Defendants filed a motion to dismiss on May 29, 2024. (Doc. 24.)

On December 17, 2024, the Court issued Findings and Recommendations to Grant Defendants' Motion to Dismiss with Leave to Amend. (Doc. 43.) The Court found Plaintiff failed to sufficiently allege that Defendants acted with deliberate indifference concerning his Eighth

Amendment claims, (*Id*. at 8-13), and recommended Defendants' motion to dismiss be granted and that Plaintiff be granted leave to file a second amended complaint (*Id*. at 14).

On December 30, 2024, Plaintiff filed a "Motion for Leave to File an Amended Complaint and Request to Add an Additional 38 pages to Amended Complaint." (Doc. 45.)

On January 8, 2025, District Judge Jennifer L. Thurston issued an Order Adopting Findings and Recommendations, Granting Defendants' Motion to Dismiss with Leave to Amend, and Terminating Plaintiff's Motion for Leave to Amend as Moot. (Doc. 46.) Plaintiff was ordered to file a second amended complaint within 60 days. (*Id*. at 2.)

On February 6, 2025, Plaintiff filed a "Motion to Request to Add an Additional 38 pages to Second Amended Complaint." (Doc. 47.) On February 7, 2025, the Court issued an Order Denying Plaintiff's Motion. (Doc. 48.)

On February 20, 2025, Plaintiff filed a second amended complaint. (Doc. 49.) On March 5, 2025, Defendants filed a motion to dismiss Plaintiff's second amended complaint.[1] (Doc. 50.) On June 3, 2025, Plaintiff timely filed an opposition to Defendants' motion, (Doc. 56), and a "Reques[t] to Take Judicial Notice" (Doc. 57). On June 17, 2025, Defendants filed a reply to Plaintiff's opposition and a request to take judicial notice. (Docs. 58 & 59).

On July 11, 2025, Plaintiff filed a document titled "Plaintiffs Reply to Opposition to Motion to Dismiss Second Amended Complaint and Objection to Defendants Argument" (Doc. 60), and a document titled "Request for Judicial Notice in Support of Plaintiffs' Reply to Opposition to Motion to Dismiss Second Amended Complaint" (Doc. 61).

On July 18, 2025, Defendants filed Defendants' Objection to Plaintiff's Reply to Opposition to Motion to Dismiss and Request for Judicial Notice. (Doc. 63.)

## II.    THE SUR-REPLY

Regardless of its title, the first pleading filed by Plaintiff on July 11, 2025 (Doc. 60), is a sur-reply.

---

[1] Before the undersigned had an opportunity to screen the second amended complaint, Defendants filed their motion to dismiss.

2

Neither the Federal Rules of Civil Procedure, nor the Local Rules for the Eastern District of California permit the filing of a sur-reply as a matter of right. Specifically, this Court's Local Rules pertaining to motions in prisoner actions provides for the filing of a motion, an opposition, and a reply. Local Rule 230(*l*); *see Garcia v. Biter*, 195 F.Supp.3d 1131, 1133-34 (E.D. Cal. July 18, 2016) (noting the plaintiff did not have a right to file a sur-reply under the local rules or under the Federal Rules of Civil Procedure). This rule also states that "[a]ll such motions will be deemed submitted when the time to reply has expired." Local Rule 230(*l*). The rule also provides as follows:

> **(m) Supplementary Material**. After a reply is filed, no additional memoranda, papers, or other materials may be filed without prior Court approval except:
>
> **(1) Objection to Reply Evidence**. If new evidence has been submitted with the reply brief, the opposing party may file and serve, no later than seven (7) days after the reply is filed, an Objection to Reply Evidence stating its objections to the new evidence. The Objection to Reply Evidence may not include further argument on the motion.
>
> **(2) Notice of Supplemental Authority**. Any party may file a notice of supplemental authority to bring the Court's attention to a relevant judicial opinion issued after the date that party's opposition or reply was filed. The notice of supplemental authority may contain a citation to the new authority but may not contain additional argument on the motion.

Local Rule 230(m).

Defendants object to Plaintiff's filing, contending that Plaintiff did not seek the Court's approval to file either document submitted on July 3, 2025, and although Defendants submitted new evidence in their reply filed June 17, 2025, Plaintiff's submissions are untimely and contain additional legal arguments precluded by Local Rule 230(m).

District courts have discretion to permit or preclude a sur-reply. *Garcia*, 195 F.Supp.3d at 1133. While courts are required to provide pro se litigants leniency, the Court generally views motions for leave to file a sur-reply with disfavor and will not consider granting a motion seeking leave to file a sur-reply absent good cause shown. *Id*.

3

Here, Plaintiff did not have the right to file a sur-reply, nor did he seek the Court's leave to do so. A review of the July 11 filing (Doc. 60) also reveals Plaintiff simply continues to argue in opposition to Defendants' motion to dismiss. His 13-page filing addresses the Eighth Amendment deliberate indifference to serious medical needs claim (*id*. at 2-5), the Eighth Amendment failure to protect claim (*id*. at 5-8), a First Amendment retaliation claim (*id*. at 8-10), an argument titled "General Assumpsit Exist Under Valid Performance" (*id*. at 10-11), and an argument titled "Special Assumsit Exits and Was Breached" (*id*. at 11-12). But Plaintiff's desire to have the final word is not an adequate basis upon which to allow him to file a sur-reply. *See Garcia*, 195 F.Supp.3d at 1134.

Even assuming Plaintiff's sur-reply did not simply seek to have the final word and instead is an objection to new evidence submitted in Defendants' reply brief, Plaintiff's submission is untimely. Rule 230(m)(1) provides a party with "seven (7) days after the reply is filed" to submit any objections. Plaintiff signed and served his document on July 3, 2025. (*See* Doc. 60 at 12-13.) Because Defendants' reply was filed on June 17, 2025, objections were due on or before June 25, 2025. Therefore, Plaintiff's submission was untimely by more than a week.

Because Plaintiff did not seek the Court's permission to file a sur-reply, and because the filing was untimely, the undersigned did not consider either filing submitted on July 11, 2025, and will strike them.

### III.   SUMMARY OF THE PARTIES' RELEVANT BRIEFING

#### *Defendants' Motion to Dismiss (Doc. 50)*

Defendants contend Plaintiff's second amended complaint fails to state a claim upon which relief can be granted, and request that the second amended complaint be dismissed without leave to amend.  Defendants contend Plaintiff cannot state an Eighth Amendment deliberate indifference to serious medical needs claim because they immediately sent him to onsite medical where Plaintiff consulted with medical staff and was x-rayed. Defendants had no authority to send Plaintiff to an outside hospital, nor were immediate life saving measures required. Defendants further contend that Plaintiff's allegations of verbal abuse do not amount to a showing of deliberate indifference.

4

Second, Defendants contend Plaintiff fails to state a threat to safety claim because he does not allege what false rumors were made, which Defendants made them, or how any Defendant attempted to stab, kill or otherwise harm him.

Third, Defendants contend Plaintiff has failed to state a retaliation claim because he does not allege Defendants were aware of his requests for medical treatment prior to March 8, 2021. Thus, Plaintiff fails to allege adverse action because of protected conduct and fails to sufficiently allege personal participation by Defendants.

Fourth, Defendants contend Plaintiff fails to state any breach of contract claim because Defendants did not intend to enter a binding contract nor did Plaintiff plead the existence of a contract. Defendants state that Plaintiff has failed to allege compliance with the applicable Government Claims Act requirements for those claims and they are entitled to qualified immunity.

### *Plaintiff's Opposition (Doc. 56)*

Regarding deliberate indifference to serious medical needs, Plaintiff contends he was not provided with the required emergency medical response, medical staff advised him he could summon emergency medical care, correctional officers are authorized to call for an emergency medical response, and the medical services offered at the institution were "rated inadequate" by the inspector general in September of 2021. Plaintiff states Defendants were aware of the risk to him and chose to disregard that risk because he personally told "Miguel, William," yelled man down, was ignored for ten minutes and insulted by Defendants. Plaintiff contends Defendants cannot ignore "court order mandate," referencing the *Plata* litigation.

Regarding his threat to safety claim, Plaintiff contends Defendants failed to activate emergency protocols, ignoring mandatory language, and failed to protect Plaintiff because he was advised by a physician to call for emergency medical response if his condition worsened and because orders issued in the *Plata* litigation support his position.

Regarding his retaliation claim, Plaintiff contends Defendants took adverse action against him "in the form of refusing" to call for an emergency medical response after a physician directed Plaintiff to do so and telling him not to ask for anything. Plaintiff also contends Defendants took

adverse action against him when he asked for Americans with Disabilities Act (ADA) accommodations and filed grievances or complaints. Plaintiff argues his First Amendment rights were chilled when Defendants attempted to have him killed, stabbed or battered.

Plaintiff further contends Defendants breached two contracts. He asserts a "new" contract was "established on Appeal #00000009351 … conditional acceptance for value." Plaintiff also appears to argue that the "code of ethics" applicable to Defendants and their duty to serve and protect creates a contract. He further argues that a contract is established with "a CDCR form 7421," advanced health care directive. That directive permits Plaintiff to make all healthcare decisions and Defendants' breach of the contract —by refusing to activate an emergency medical response —means he is owed $3,000,000.

Next, Plaintiff argues he complied with the state law claims requirements by sending a form to the Department of General Services on August 3, 2021, and that Defendants are not entitled to qualified immunity.

***Defendants' Reply (Doc. 58)***

Defendants contend Plaintiff cannot state a deliberate indifference to serious medical needs claim because he was referred to medical staff and Defendants cannot be liable for the conduct of others, Plaintiff incorrectly argues that emergency medical response procedures allow correctional staff to activate emergency transport to an outside hospital without involving medical staff, and he fails to show the orders issued in the *Plata* litigation pertained to the institution where he was housed.

Next, Defendants contend Plaintiff fails to state a threat to safety claim because his opposition simply restates his medical claim. Regarding his retaliation claim, Defendants assert that Plaintiff does not state how Defendants were aware of Plaintiff's prior protected conduct prior to taking any alleged adverse action.

Defendants argue Plaintiff fails to state any breach of contract claim because health care initiatives do not create enforceable contracts. They contend Plaintiff has failed to demonstrate Defendants intended to enter legally enforceable contracts, and because the contracts did not exist, Plaintiff cannot establish a breach.

Finally, Defendants assert Plaintiff fails to allege compliance with the Government Claims Act because the attachments to Plaintiff's opposition do not establish that Plaintiff complied with respect to his breach of contract claims. One claim form is not dated or stamped received and alleges deprivation of food and religious diet; the other claim form is not stamped received and refers to a purported breach of contract on May 21, 2021, rather than March 8, 2021.

## IV.   REQUESTS FOR JUDICIAL NOTICE

### *Plaintiff's Request for Judicial Notice (Doc. 57)*

Citing to Rule 201 of the Federal Rules of Evidence, Plaintiff asks the Court "to take judicial notice of the following adjudicative fact: [¶] Plaintiff contains Exhibits stipulated in his facts section that Reveal they exist in (Doc. 49 Facts Section) and need to be shown to the Court, stating Relevant issues to not be disputed by Defendants of the existing documents or evidence of such acts, injuries, Medical Records and witnesses of the existing truth of these Facts."[2]

Plaintiff includes declarations by Kyle Frank and Eric Sanchez and contends the accuracy of the declarations can be readily determined by sources whose accuracy cannot be questioned.

---

[2] The following are attached as exhibits: **Exhibit A** – "Affidavit/Declaration of Kyle Frank #AG1177" and "Affidavit," signed by Eric A. Sanchez; **Exhibit B** – Pages 4 and 5 of a typed document bearing the following header: "Ms. Tamiya Davis, Re: Julio Sandoval, G44696, September 10, 2020;" **Exhibit C** – a Pulmonary Function Test dated November 30, 2022, signed by Muhammad Ashraf-Alam, MD, FCCP, FAASM, and an Emergency Discharge Summary dated March 12, 2021, issued by Adventist Health Bakersfield; **Exhibit D** – the first page of a multi-page October 8, 2021, letter from the Prison Law Office directed to "CDCR/CCHCS" regarding "Follow-up From August 10-13, 2021 Remote Plata Visit to SATF," that includes the heading "Dismissive and Unprofessional Behavior from Nursing Staff" and a copy of a four-page Order Regarding Allegations of Mistreatment of Armstrong Class Members at SATF issued November 8, 2021, in *Armstrong, et al. v. Gavin Newsom, et al.*, Case No. 94-cv-2307 CW, in the United States District Court for the Northern District of California; **Exhibit E** – page 3 of a 7-page Advance Directive for Health Care CDCR 7421 form, naming "Isvet Sandoval" as a second alternative agent and presumably Plaintiff's handwritten statement: "First I will determine all decisions second those mentioned here this includes Medical treatment and/or Medicen No other Personal is authorized or recognized unless Noted by Me notes on Back of Notice of terms of Decisions"  and a handwritten page "-2-" that includes language stating that ignoring "All Medical decisions" or requests for treatment is "a forfeiture" that will result in "a 3 million United State Fee," and that "No other terms Stand;" **Exhibit F** – copies of documents related to a CDCR Form 602-2, referencing "Claim #: 000000154860" and 602 grievance log number 154860; **Exhibit G** – correspondence from the Office of Appeals dated February 23, 2022, a Claimant Appeal Claims Decision Response concerning "Log #: 000000009351" dated October 17, 2020, and a Request to Implement Remedies, CDCR 602-3 form dated June 18, 2021, and 602-2 Appeal of Grievance forms dated August 9, 2020; **Exhibit H** – a single page handwritten, unsigned and undated document titled "Title II. Law California, Code, Regulation, § 1013 Code of Ethics" and an undated single-page document titled "California Department of Corrections and Rehabilitation, Correctional Officer, Open Statewide Examination, Final Filing Date: Continuous."

Plaintiff states a letter "by Tamiya Davis dated September 10, 2020" should be judicially noticed because it involves a "material fact of Staff Misconduct telling Plaintiff 'Dont ask us for nothing' and other retaliating behavior, pattern of such existing notice and well received … not [stopping] such act but putting [Plaintiff] under duress harming him [whose accuracy cannot reasonably be questioned]."

Plaintiff asks the Court to take judicial notice of "Medical reports one on 3-12-2021 and the other dated 11-30-2022. First one titled Emergency Discharge Summary found a Diagnosis: Acute chest pain, Bronchitis: cough; History of COVID 19) and Second medical report titled Pulmonary Function test Finding Mild obstruction and unable to do DICO due to persistent cough, obstruction exist in Plaintiff's airway/lungs. Such Medical reports [can be accurately and readily determined and generally known within the territorial jurisdiction of the Court from sources whose accuracy cannot reasonably be questioned]."

Next, Plaintiff states: "The fact that is the subject of this request for judicial notice, namely nurses celebrating inmate deaths …," and cites to the Prison Law Office as a "source" and "Case #94-cv-2307 CW John Armstrong et al v. Gavin Newsom, et al."

Plaintiff also asks the Court to take judicial notice of "the [existence] of a contract on titled Advance Directive for Health Care on CDCR 7421 Form …," grievance log numbers "105089 and 154860," the Appeal Claims Decision Response in "Log #000000009351," that "Code of Ethics and CDCR, Correctional Officer expected duty to serve written document Notices for Defendants Conduct is one that is not subject to dispute …," citing "Title 11, Law California, Code, Regulation § 1013."

### Defendants' Request for Judicial Notice (Doc. 59)

Defendants ask the Court to take judicial notice of the California Department of Corrections and Rehabilitation Health Care Department Operations Manual section 3.7.1.

### Rule 201 of the Federal Rules of Evidence

The relevant sections of Rule 201 are as follows:

> **Rule 201. Judicial Notice of Adjudicative Facts**
> **(a) Scope.** This rule governs judicial notice of an adjudicative fact only, not a legislative fact.

8

**(b) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:

**(1)** is generally known within the trial court's territorial jurisdiction; or

**(2)** can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

**(c) Taking Notice.** The court:

**(1)** may take judicial notice on its own; or

**(2)** must take judicial notice if a party requests it and the court is supplied with the necessary information.

**(d) Timing.** The court may take judicial notice at any stage of the proceeding.

Fed. R. Evid. 201.

### *Plaintiff is Not Entitled to Judicial Notice*

First, inmate Frank's declaration states he observed Plaintiff in pain on March 8, 2021, heard Plaintiff yelling "man down" and requesting medical attention, heard "correctional officer Miguel saying he is not going to call a medical emergency or contact medical staff," heard Plaintiff "continue to yell to the tower officer Lopez" that he was in pain and required emergency medical attention, and observed Lopez "smile and shake her head, and never hit the alarm," while Miguel continued to state he was "not going to call for medical." (Doc. 57 at 7.) Sanchez states that on March 8, 2021, he observed Plaintiff "go up to the officers then go sit down & lay down on the bench screaming Man down …," that Miguel kept "telling the tower no, not to call Medical [Emergency]," that Plaintiff continued to yell "Man down," and that the "tower [i]gnored and followed the floor staffs instructions" before Plaintiff left the area. (*Id*. at 8.) These declarations are not subject to judicial notice because their facts are not generally known within the Court's territorial jurisdiction, nor can they be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See Walker v. Woodford*, 454 F. Supp. 2d 1007, 1024 (S.D. Cal. 2006), *aff'd in part*, 393 F. App'x 513 (9th Cir. 2010) (finding that declarations from other inmates, various correspondence, newspaper articles, and information from an internet website did not "fall into the limited category of documents that can be judicially noticed under Rule 201"); *see also, e.g.*, *Fields v. Patterson*, No. 1:10-cv-01700-LJO-EPG-PC, 2016 WL 1162083, at *8 n.5 (E.D. Cal. Mar. 24, 2016) (inmate declarations "are not subject to judicial notice because they are not facts generally known within the trial court's territorial jurisdiction or that can be accurately and readily determined from sources whose accuracy cannot reasonably be

9

questioned"); *Montes v. California*, No. CV 13-5258-GHK (DTB), 2014 WL 3519179, at *3 n.6 (C.D. Cal. May 1, 2014) (court declined to take judicial notice of the declarations of several other inmates "because such documents are not from a source 'whose accuracy cannot reasonably be questioned' and the facts alleged in the documents cannot be considered 'generally known'"). Therefore, the Court declines to take judicial notice of the Frank and Sanchez declarations.

The partial letter allegedly sent from "Ms. Tamiya Davis" on September 10, 2020, recounts Plaintiff's reports of retaliation "for requesting disability accommodations," "the conduct of a Third Watch officer in late June," and tense "relationships with [] housing unit officers." (Doc. 57 at 10-11.) It also addresses Plaintiff's "fears that Officer Mejia may have been spreading false rumors about him in an attempt to set him up to be assaulted by other incarcerated people" and apprehension "that multiple officers on the yard have now spread false rumors about him to jeopardize his safety." (*Id*. at 11.) It also cites to docket entries of orders in an unidentified action. (*Id*.)  This letter is not authenticated, and its facts are not generally known, nor can they be accurately and readily determined. *Walker*, 454 F. Supp. 2d at 1024; *Bradford v. Usher*, No. 1:24-cv-00047-KES-EPG (PC), 2025 WL 105917, at *1 (E.D. Cal. Jan. 15, 2025) (declining to take judicial notice of "unauthenticated IRS letters" because 'the facts that plaintiff seeks to establish through judicial notice … are not ones that are 'generally known,' and they are not ones that 'can be accurately and readily determined' from the documents. Nothing in the IRS letters suggests that plaintiff's tax rebates were 'stolen by the guards … to prevent him from using his (IRS) funds to pay the filing fees'" as alleged in his complaint). Thus, the Court declines to take judicial notice of the September 10, 2020, letter.

The Court also declines to take judicial notice of the medical reports or records dated March 12, 2021, and November 30, 2022, because these documents are not generally known, nor can they be accurately and readily determined. *See, e.g., Foster v. Kaweah Delta Medical Center*, No. 1:21-cv-01044-JLT-HBK (PC), 2023 WL 3254349, at *6 (E.D. Cal. May 4, 2023) (declining to take judicial notice of "purported medical opinions for x-rays and medical documents" because such records are not readily verifiable or generally known to the public); *Singanonh v. Fine*, No. 2:18-cv-1824 KJM AC P, 2020 WL 2193498, at *2 (E.D. Cal. May 6, 2020) ("The court declines

to take judicial notice of plaintiff's medical records because they are not properly authenticated and the medical records are irrelevant to the resolution of the motion to dismiss"); *Fields*, 2016 WL 1162083 at *8, n. 5 (physical therapy evaluation of wrist/hand).

Finally, the October 8, 2021, correspondence from the Prison Law Office pertaining to allegations of "Dismissive and Unprofessional Behavior from Nursing Staff" has no relevance to the instant motion to dismiss, nor is the letter authenticated, readily verifiable or generally known to the public. *Bradford*, 2025 WL 105917, at *1; *Bruce v. Woodford*, No. 1:07-cv-00269-BAM PC, 2014 WL 4930699, at *1 (E.D. Cal. Sept. 30, 2014) (denying judicial notice because "letter [from inspector general to state senator] does not relate to the instant action and is not relevant to the hunger strike in this case"). Therefore, the Court declines to take judicial notice of October 18, 2021, correspondence from the Prison Law Office.

In sum, Plaintiff's requests for judicial notice are denied. Fed. R. Evid. 201.

### *Defendants Are Entitled to Judicial Notice*

Defendants' request that the Court take judicial notice of the California Department of Corrections and Rehabilitation (CDCR) Health Care Department Operations Manual section 3.7.1, stating the relevant provision can be verified.[3] Defendants' request is granted as these documents are subject to judicial notice. *See Brown v. Valoff*, 422 F.3d 926, 931, n.7 (9th Cir. 2005) (taking judicial notice of the Department Operations Manual); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004) (court "may take judicial notice of a record of a state agency not subject to reasonable dispute"); *see also Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 978 n.2 (9th Cir. 2007) (explaining that a court may take judicial notice of a government publication); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (taking judicial notice of public records that "can be accessed at Santa Monica's official website").

//

//

---

[3] https://www.cdcr.ca.gov/hcdom/dom/chapter-3-health-care-operations/article-7- emergency-medical-response/3-7-1-emergency-medical-response-system/

## V. PLAINTIFF'S SECOND AMENDED COMPLAINT

***The Second Amended Complaint***

Plaintiff names the following individuals, in their official and personal capacities, who are correctional officers at Substance Abuse Treatment Facility (SATF) in Corcoran, California, as defendants in the action: M. Lopez, William, A. Miguel, Felix, Andrade, R. Cerillo, and F. Perez. (Doc. 49 at 1-2.) Attached as exhibits to the second amended complaint are the following: a CDCR 7362 Health Care Request Service Form dated March 4, 2021,[4] and a Reasonable Accommodation Panel (RAP) Response following a RAP panel meeting held March 10, 2021 (*id*. at 20-21 [Exhibit A]); and a CDCR 602 form dated June 25, 2020, and a handwritten document titled "Notice of Terms and Conditions" dated and signed April 3, 2021 (*id*. at 23-25 [Exhibit B]).

Plaintiff seeks the following remedies:

> A preliminary and permanent injunction ordering Defendants and their (CDCR)s counter parts officers to cease their rogue actions, violent and threats of hearing Julio Sandoval and
>
> Granting Plaintiff compensatory damages in the amount of $10,000,000.00 U.S. dollars against each defendant jointly and severally
>
> Have Defendants pay for any further medical needs do to his lung complications, failure to properly breath for the rest of his lung complications or breathing problem
>
> Be evaluated by a medical lung expert of his choosing to conduct lung damage and evaluation
>
> Plaintiff seeks a jury trial on all issue triable by a jury
>
> To allow the ex contratu stand under the Court record of the United States of America, established in California on 6-17-2020, on certificated document in (SATF) contract/Appeal number 000000009351 fully granted and excepted for (CAFV) by (CDCR) in (SATF) notified all proper authority signed it approved it endorsing Plaintiff cure for breach of contract and did cause harm to plaintiff again, damaging him for life. Let these be the Notice of Terms and Conditions while in (CDCR) on the record of the Courts under the TRUE Elohim we TRUST.
>
> Should Defendants and Counter (LEG)[5] in (CDCR) continue to

[4] The copy is nearly completely illegible – the handwriting is too faint to read in all sections except the "DATE" box. (Doc. 49 at 20.) Plaintiff has added a legible "copy/verbatim of the top form." (*Id.*)

[5] "LEG" refers to "law enforcement gang."

harm, retaliate upon Plaintiff a fine should be imposed of $80,000.00 U.S. dollars for each violation and each defendant before any Court proceedings, especially if plaintiff is harmed again

Bring forth Defendants false witness to testify and should Defendants or witnesses be found liars, in perjury be additionally fined $150,000.00 United States dollars, including those forging false documents

[Provide] camera images/video of 3-08-2021 time 8:00 AM to 9:30 AM should the video be lost fine the perpetrator $80,000/00 U.S. dollars for concealing evidence by an officer of the law

The Court should apply Senate Bill 2, 2021 Cal. P. Code 13510.8 when screening Defendants Reply, to claims by Plaintiff. Including a fine of $80,000.00 U.S. Dollars if any forms are lost or corrupted

Plaintiff will need proper names of agents/defendants for breach of contract and background check for harmful acts [committed] by them in the past, supported by California law Senate Bill 1421 – Peace Officer Release of Records

Have Rogue Agents cease stop reprisals in (SATF) state prison if not pay a forfeiture of $200,000.00 U.S. dollars before any Court proceeding if they violate acts of retaliation, harm him again, no cure has been given to plaintiff as he suffers, including (CDCR)

Any additional relief the Court deems just proper and equitable

(Doc. 49 at 17-18 [some modification to capitalization].)

### *Factual Allegations[6]*

On or about November 28, 2020, while housed at SATF, Plaintiff suffered from COVID-19 without medical treatment, having been told to drink water and get lots of sleep. (Doc. 49 at 3.) Plaintiff had filed a health care request form (CDCR 7362) and a reasonable accommodation form (CDCR 1824) the previous day, requesting medications for cough and congestion, and seeking treatment for trouble breathing. (*Id.*) Plaintiff contends he was denied treatment and was told to "tell staff if he has an emergency." (*Id.*)

Plaintiff again sought medical treatment by submitting a health care request and a reasonable accommodation form, asking to be seen on March 4, 2021, because the pain had

---

[6] Plaintiff frequently asserts legal conclusions throughout the second amended complaint (*see, e.g.*, Doc. 49 at 3 ["faced with inadequate Medical care in violation of Plaintiff's Constitutional right"]). The Court omits many such references and will focus on the facts asserted.

increased, and he was having difficulty breathing. (Doc. 49 at 3.) He contends both forms were ignored despite "specifying his lungs hurt and burn causing severe pain." (*Id*.) The "pain had increased due to finding out his pain and suffering was [due] to being infected with two deadly [viruses] of COVID-19 and Coccidioidomy, also known as (Valley fever or Cocci)." (*Id*.) Plaintiff asserts he followed the "(RAP) Response … to let staff/medical know of his emergency needs, including two prior 1824 forms." (*Id*.) Plaintiff contends the health care request (7362) and reasonable accommodation request (1824) were "ignored for four days." (*Id*.)

Next, Plaintiff contends that on March 8, 2021, his "pain increased of severe body, [undeniable] chest pains and with complications breathing in pain," he "had to call for medical emergency help." (Doc. 49 at 3.) At 8 a.m., Plaintiff walked toward Defendants Miguel and William; Felix and Andrade were beside them. (*Id*.) Plaintiff specifically told Defendants Miguel and William that he was having trouble breathing, that his chest was burning and that he needed "to go 'Man down.'" (*Id*.) Miguel and William both indicated they "were doing Pill Call" and told Plaintiff to "walk over there to Medical." (*Id*.) Defendants Felix and Andrade were about five feet away and "did not act, intervene" to Plaintiff's "Man down" statement. (*Id*.) Plaintiff "walked to the bench in pain," holding his side and coughing, yelling loudly numerous times "'Man down! Man down!'" (*Id*. at 3-4.) Plaintiff "observed" Defendant Miguel "tell the tower No! Not to call Man down." (*Id*. at 4.) Plaintiff continued to yell "Man down! Man down!" and Miguel continued to tell Defendant Lopez to ignore Plaintiff and to not "call for Medical Emergency." (*Id*.)

Plaintiff alleges Defendant Miguel, William, Felix, Andrade, and Lopez "failed to call for help." (Doc. 49 at 4.) His pain increased, he was in severe pain, had trouble breathing, and was holding his chest and yelling "for about 10 minutes." (*Id*.) Miguel told him, "'Why [don't] you walk your F*N ass to Medical'" in a hostile manner. (*Id*.) Plaintiff "walked in shame, in shock and in severe pain" to medical where Defendants Cerillo and Perez were present. (*Id*.)

Plaintiff advised Cerillo and Perez he needed to go man down, was having trouble breathing and that his chest hurt, but they ignored him, stating they were doing pill call and would not be stopping. (Doc. 49 at 4.) Plaintiff alleges that although his pain increased, Cerillo "said '[we're] not Medical Staff,'" and pointed at the nurses. (*Id*.) The nurses told Plaintiff to wait. (*Id*.)

14

Plaintiff contends all Defendants failed to call 9-1-1 or for help, contrary to their training and duties, and "[a]fter Doctor G. Ugwueze directed Plaintiff to call for [Emergency Medical Response]." (Doc. 49 at 5.) Defendants Felix and Andrade laughed at Plaintiff's suffering. (*Id.*)

On March 9, 2021, Defendant Miguel taunted Plaintiff by saying, "'You [don't] got no medical issues today!'" (Doc. 49 at 5.) In response to Plaintiff's statement that Miguel did not care, Miguel stated, "'[Don't] be playing your stupid games!" (*Id.*) Plaintiff contends Miguel's "hostility and refusal to provide plaintiff medical care was very inadequate [,] " and Defendants ignored him for four days while a medical emergency call should take no longer than four minutes. (*Id.*)

On March 12, 2021, Plaintiff was taken to the hospital "with swollen lungs" and in severe pain. (Doc. 49 at 6.) He underwent a CT scan. (*Id.*) His lungs are permanently damaged due to difficulty breathing, coughing, acid reflux, choking, and scarring. (*Id.*) He contends his oxygen levels will be low "for his life, and lowering his normal high capacity activity to do certain activities." (*Id.*)

Next, Plaintiff states he is a member of the *Armstrong* class action and is a "victim of numerous acts of retaliation and facing duress for filing grievances …." (Doc. 49 at 6.) He contends that while he "was exercising his protected conduct of asking for Medical emergency help (EMRS), he was faced with a Law Enforcement Gang (hereinafter LEG) that have a pattern of such duress, harming him and unlawful conduct," and violating Court orders. (*Id.*) He alleges Defendants took prior adverse action "which consisted of retaliating towards Plaintiff" when he sought ADA accommodations and filed "prison appeals, like (9351) appeal." (*Id.* at 7.) Fearing retaliation, on March 4, 2021, Plaintiff wrote to the Prison Law Office but the "letter went missing." (*Id.*)

Plaintiff alleges "Defendants, counter (LEG) told him 'don't ask us for nothing' with evil intent." (Doc. 49 at 7.) Defendants "conduct of inducement of false rumors" and "retaliation and [harassment] chilled [Plaintiff] from asking for further (EMRS) help and conduct was so bad that it would stop an 'average person' to ask for help from the Defendants and their (LEG)." (*Id.*) Plaintiff contends "Defendant stating 'Don't be playing your stupid games,' and attempting to

15

have [him] harmed, stabbed or killed … successfully harmed" him. (*Id*.) Plaintiff contends he has a constitutionally protected right "to ask for Medical Emergency call (EMRS) system but Defendants acted as a (LEG)" and ignored his request because he had previously exercised his right to ask for ADA accommodations and to file grievances. (*Id*.) He contends they continued to retaliate by cancelling visits, terminating visits early, searching his cell "continuously," obstructing his access to the law library "including at MCSP," spreading rumors, and by attempting to have him "battered, stabbed or killed." (*Id*.)

Plaintiff alleges that in 2021, the "California for a Responsible Budget (hereinafter CURB) did an evaluation [of] spending by (SATF) active project valued at 79.5 million United States dollars for the benefit of Plaintiff and Defendants performance to their duty, obligations and follow procedures." (Doc. 46 at 7.)

Next, Plaintiff asserts that "Form 7421 established a cure for Health Care directives established" June 11, 2020, and that the "form 'Instrument' was breached and financial gain for Defendants and (SATF) medical center …." (Doc. 49 at 7.) Plaintiff contends "Form 7421 was accepted and Defendants were to perform duty of (EMRS) by Plaintiff asking for help breaching contracts to not harm" him. (*Id*. at 8.) He alleges that on June 17, 2020, he "established a notice of terms and condition" and that "conditional acceptance for value … was established on Appeals …." (*Id*.) Plaintiff asserts his terms and conditions "were not cured" and that he "was met with hostility and further retaliation …." (*Id*.) He contends the contracts are "implied in fact" and that further retaliation created "a total breach." (*Id*.) Plaintiff contends Defendants were "acting in their official fiduciary power, Code of Ethics, U.S. Constitution" and his "contract under duress under financial gain by Defendants getting money for Plaintiff's needs and not to harm [him]." (*Id*.) He asserts he is owed a "forfeiture of $10,000,000.00 for each violation." (*Id*.)

### *Plaintiff's Claims*

Plaintiff alleges five claims in the second amended complaint: (1) Eighth Amendment deliberate indifference to serious medical needs; (2) Eighth Amendment failure to protect; (3) First Amendment retaliation; (4) "Action in Assumpsit, in General Assumpsit Breach of Contracts;" and (5) "Special Assumpsit Breach of Contracts." (Doc. 49 at 9-17.)

16

## VI.   APPLICABLE LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In resolving a 12(b)(6) motion, the Court's review is generally limited to the "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008) (internal quotation marks & citations omitted). Dismissal is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted). In addition, the Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard … applies only to a plaintiff's factual allegations," not his legal theories. *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989).

## VII.   DISCUSSION

As an initial matter, the Court notes that most of Plaintiff's claims rely on the validity of his assertion that he was entitled to an emergency medical response in the form of transportation to an outside hospital when he approached the Defendants in March 2021 and asked to go man down. Plaintiff's assertion is incorrect.

The CDCR Health Care Department Operation Manual (HCDOM), section 3.7.1, states, in pertinent part, that "Patients may request medical attention for urgent/emergent health care needs from any CDCR employee. The employee, shall, in all instances, notify health care staff." (Doc. 59 at 6.) It further provides:

17

Direct contact with the patient by a Registered Nurse (RN) or physician, either in person or by telephone, shall be provided for all patients requesting urgent/emergent medical attention or who are referred by staff. The RN or physician on duty shall choose one of the following options for evaluating the patient:

    1.  Arrange to have the patient brought to the clinic.

    2.  Arrange to have the patient brought to the Triage and Treatment Area (TTA).

    3.  Evaluate the patient in his/her housing unit or current location.

    4.  Talk directing to the patient via telephone, complete a telephone triage, and give direction to the patient for subsequent care.

(*Id.*) And "[a]ll staff has the authority to initiate a 9-1-1 call for Emergency Medical Services (EMS)" and "[a]ny patient may request medical attention for an urgent or emergent health care need from any CDCR or CCHCS employee. The employee shall in all instances notify health care staff without unreasonable delay." (*Id.* at 8.) Further, the HCDOM provides: "Activation of the institutional Emergency Medical Response System and the community EMS system shall occur as necessary to ensure the most appropriate level of emergency medical care is available in the shortest time interval." (*Id.*) In addition to the above, a review of section 3.7.1 of the NCDOM reveals the procedures specifically applicable to "first aid and/or [Basic Life Support] …, and administering CPR," custody protocols involving "continue[d] life support measures," the use of an Automated External Defibrillator (AED), and reporting various requirements. (*Id.* at 9-14.)

In sum, section 3.7.1. of the HCDOM does not provide that custody staff, like Defendants here, have the authority to send Plaintiff directly to an outside hospital for treatment. While custody staff can initiate a 9-1-1 call, they are not required to do so at the patient's request. And transportation is the province of health care staff not custody staff.

### A.  *Plaintiff Fails to State Cognizable Eighth Amendment Deliberate Indifference to Serious Medical Need Claims*

#### Applicable Legal Standards

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need

is serious if failure to treat it will result in "'significant injury or the unnecessary and wanton infliction of pain.'"" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm

19

was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096, citing *McGuckin*, 974 F.2d at 1060.

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see also Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

Analysis

First, to the extent Plaintiff's third amended complaint references prior health care requests and a reasonable accommodation request that were "ignored for four days," the Court accepts those facts as providing context for events leading up to his interaction with Defendants on March 8, 2021. However, those facts do not state an Eighth Amendment claim against the named Defendants – all custody staff – because they fail to indicate Defendants were aware those requests had been ignored.

Second, Plaintiff fails to state a claim upon which relief can be granted. While Plaintiff meets the first prong of the test—a serious medical need, like trouble breathing and a burning sensation in his chest—he fails to meet the second prong by establishing deliberate indifference. Defendants did not fail to respond to Plaintiff's pain or medical need. Instead, Defendants Miguel and William immediately directed Plaintiff to seek aid from medical staff, as did Defendants Cerillo and Andrade. *Farmer*, 511 U.S. at 835, 844-45. Even assuming Defendants' responses delayed medical treatment, Plaintiff's allegations are insufficient.

20

Where a prisoner alleges that delay of medical treatment evinces deliberate indifference, he must also allege that the delay led to further injury. *Hallett*, 296 F.3d at 746. Plaintiff's conclusory allegations do not show he suffered greater harm because of the 10-minute delay. Before Plaintiff approached Defendants, he alleges he was having trouble breathing and severe pain in his chest; those symptoms continued throughout, and Plaintiff makes only a vague assertion that his "pain increased" after he was directed by Miguel and William to walk to medical. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (a "mere delay" in treatment, "without more, is insufficient to state a claim of deliberate medical indifference"); *Toguchi*, 391 F.3d at 1057, 1060 (deliberate indifference is a high legal standard). And Plaintiff's third amended complaint indicates he was then seen by medical staff. At most, Plaintiff's allegations against the Defendants amount to mere negligence and are thus insufficient to state a claim. *Farmer*, 511 U.S. at 835; *Frost*, 152 F.3d at 1128; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (gross negligence is insufficient to establish deliberate indifference to serious medical needs claim).

Next, Plaintiff's contention that Defendants were required to call 9-1-1 or take some other emergency action that would result in his transportation to an outside hospital is incorrect. As noted above, section 3.7.1. of the HCDOM provides that custody staff can initiate a 9-1-1 call, but they are not required to do so. Further, that section indicates that only *medical* staff have the authority to send Plaintiff to an outside hospital for medical treatment. Moreover, Title 15 of the California Code of Regulations section 3999.400 provides that CDCR "shall ensure that medically necessary emergency medical response, treatment, and transportation is available" and that inmates "may request medical attention for urgent/emergent health care needs from any CDCR employee," but that the "employee shall, in all instances, notify health care staff without delay." 15 C.C.R. § 3999.400(a), (c). Accordingly, Defendants were not deliberately indifferent

21

to Plaintiff's serious medical need. *Wilhelm*, 680 F.3d at 1122; *Jett*, 439 F.3d 1096.[7][8]

In sum, Defendants did not disregard a substantial risk of serious harm to Plaintiff because they did not disregard the risk, and instead took reasonable measures to abate any risk by immediately directing Plaintiff to seek treatment from onsite medical personnel. *Farmer*, 511 U.S. at 847.

### B. Plaintiff Fails to State Cognizable Eighth Amendment Failure to Protect Claims

Applicable Legal Standards

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corrections Corp. of America,* 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer*, 511 U.S. at 832-33 & *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, a prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." *Labatad*, 714 F.3d at 1160 (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety." *Farmer*, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very

[7] *Cf. Collins v. Nevada Department of Corrections*, No. 2:22-cv-01795-CDS-BNW, 2025 WL 1837544, at *3 (D. Nev. July 3, 2025) (granting summary judgment and holding: "There is no genuine issue of material fact as to whether [Nurse] Henry was complying with [the Nevada Department of Correction's] AR 630 [Emergency Medical Response Procedure]. AR 630 states that during a medical emergency, 'the medical staff will manage the medical aspects of the emergency once they are notified, including orders for transfer via ground or air transportation.' … It further states, 'Correctional staff will manage the security for the medical emergency[.]' … Per AR 630, Henry was not the person in the emergency situation who was responsible for assessing the safety of herself and others in the emergency situation with Collins; security personnel were").

[8] There "is no [section] 1983 liability for violating prison policy. Plaintiff must prove that the official violated his constitutional right." *See Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921, 930 (9th Cir. 2001) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)).

22

fact that the risk was obvious." *Id.* at 842 (citations omitted). The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner. *Id*. at 832-33; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). As "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotations marks, emphasis, and citations omitted).

To state a claim, the Eighth Amendment requires allegations sufficient to plausibly show that prison officials were deliberately indifferent to a substantial risk of harm or safety. *Farmer*, 511 U.S. at 847. The objective component of an Eighth Amendment requires that a prisoner show he was deprived of something "sufficiently serious." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer*, 511 U.S. at 834.) The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Id*. at 837.

<u>Analysis</u>

Because Plaintiff's failure to protect claim largely relies upon Defendants' refusal to call 9-1-1 or take some other action pursuant to emergency medical response protocols upon Plaintiff's request, his claim fails for the reasons discussed above. To the extent Defendants argue Plaintiff's failure to protect claim involves Defendants asserting "false rumors" and attempting to "have him stabbed or killed," the undersigned agrees such allegations are insufficient to state a claim. Plaintiff does not indicate *what* "false rumors" were circulated or *who* circulated them, nor does Plaintiff explain *how* any Defendant attempted to have him stabbed or killed. *See Gibson v. City of Portland*, ___ F.4th ___, 2026 WL 235118, at *16-18 (9th Cir. Jan. 29, 2026) (simply grouping some or all defendants and ascribing to them generalized assertions of overall conduct is insufficient); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (a "plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights").

23

Finally, any Defendants' "hostile" or inappropriate verbal response to Plaintiff's requests do not state a claim. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (mere verbal harassment or abuse does not violate the Constitution); *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (threats do not rise to the level of a constitutional violation); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (allegations of harassment with regards to medical problems not cognizable); accord *Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th Cir. 1975) (Arkansas state prisoner does not have cause of action under § 1983 for being called obscene name by prison employee); *Batton v. North Carolina*, 501 F. Supp. 1173, 1180 (E.D. N.C. 1980) (mere verbal abuse by prison officials does not state claim under § 1983).

In sum, Plaintiff fails to state a cognizable claim against any named Defendant and Defendants' motion should be granted.

### C. Plaintiff Fails to Allege Cognizable First Amendment Retaliation Claims

Applicable Legal Standards

Prisoners have a First Amendment right to file prison grievances and lawsuits and retaliation against prisoners for exercising this right is a constitutional violation. *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005). A claim for First Amendment retaliation in the prison context requires: (1) that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) "the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68. To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882-83 (9th Cir. 2011); accord, *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected

24

conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

Analysis

Plaintiff contends "Defendants acted against Plaintiff in the form of refusing 'EMR' a directive by doctors order Court order and chief doctor order," but there are no facts alleged that any Defendant was aware of either a doctor's order or a "Court order." Nor are there any facts alleged to indicate any Defendant was aware of the grievances, appeals, or reasonable accommodation requests submitted by Plaintiff. Plaintiff's allegations amount to nothing more than speculation. *McCollum*, 647 F.3d at 882-83; *Wood*, 753 F.3d at 905. Moreover, Plaintiff makes little or no effort to link any assertion to a particular Defendant. *Gibson,* 2026 WL 235118, at *16-18; *Barren*, 152 F.3d at 1194.

Further, Plaintiff's allegation that "Defendants would not have acted as they did but for their motive to retaliate because of his [complaints] and appeals," is speculative and incorrect. This record reveals that Defendants were not required to call 9-1-1 or respond to Plaintiff's asserted medical emergency in a particular way, but were instead required to notify medical staff who have the sole authority to send Plaintiff to an outside hospital for medical treatment.

In sum, Plaintiff has failed to establish that these Defendants took adverse action against him because of his protected conduct. *Rhodes*, 408 F.3d at 567-68; *Brodheim*, 584 F.3d at 1269, 1271. Thus, Defendants' motion should be granted.

### D. *Plaintiff Fails to State Cognizable Breach of Contract Claims*

To bring a tort claim under California law, a plaintiff must also allege compliance with the California Government Claims Act (CGCA). Under the CGCA, a plaintiff may not maintain an action for damages against a public employee unless he has presented a written claim to the state Victim Compensation and Government Claims Board within six months of accrual of the action. Cal. Govt. Code §§ 905, 911.2(a), 945.4 & 950.2; *see also Klein v. City of Laguna Beach*, 533 Fed. Appx. 772, 774 (9th Cir. 2013) (dismissing claims for failure to comply with the CGCA). Failure to demonstrate such compliance constitutes a failure to state a cause of action and will

25

result in the dismissal of state law claims. *State of California v. Superior Court* (*Bodde*), 32 Cal. 4th 1234, 1240 (2004).

Here, it is not clear Plaintiff has adequately pled compliance with the CGCA. Exhibits A and B to Plaintiff's opposition include claim forms that reflect incident dates of "10.24.20 – got 3.30.2021" and "5.21.2021." (*See* Doc. 56 at 46, 51.) The incident giving rise to Plaintiff's claims here occurred on March 8, 2021,[9] one of the claim forms is not dated (*id*. at 47), and neither copy includes an indication those forms were received by the Department of General Services (*id*. at 46-47, 56-57). All that is clear is that Plaintiff submitted two claims (Nos. 21003638 & 21006053) at some point prior to October 5, 2021, and December 23, 2021, respectively. (*Id*. at 44, 50.) In any event, for purposes of the motion, the Court will assume Exhibits A and B are the claim forms associated with claim numbers 21003638 and 21006053.

The Court next considers Plaintiff's breach of contract claims. Plaintiff's allegations appear to assert that certain grievances and health care directives on CDCR form 7421 created contracts between Plaintiff and Defendants, and Defendants breached those contracts by denying Plaintiff's request for emergency medical care.

<p align="center">The Applicable Legal Standards</p>

To state a breach of contract claim under California law, there must be (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff. *Coles v. Glaser*, 2 Cal.App.5th 384, 391 (2016). "[A] contract must be sufficiently definite, so that the court may 'ascertain the parties' obligations and ... determine whether those obligations have been performed or breached.'" *Pfeister v. Int'l Bus. Machines Corp.*, 2017 WL 4642436, at *3 (N.D. Cal. Oct. 16, 2017) (quoting *Ersa Grae Corp v. Fluor Corp.*, 1 Cal.App.4th 613, 623 (1991)). "If ... a supposed 'contract' does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract." *Weddington Prods., Inc. v. Flick*, 60 Cal.App.4th 793, 811 (1998); *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096,

---

[9] Therefore, any claim must have been presented no later than September 8, 2021.

1108 (9th Cir. 2009) ("as a matter of contract law, the promise must 'be as clear and well defined as a promise that could serve as an offer, or that otherwise might be sufficient to give rise to a traditional contract supported by consideration'")

Analysis

Plaintiff has failed to plead the existence of a contract. The Court has identified no cases where a court found the submission of grievances or appeals, or the submission of a form concerning health care directives created a contract between the party who submitted the grievance, appeal, or health care form, and any other party. And this Court is not required to accept Plaintiff's legal theories. *Neitzke*, 490 U.S. at 330 n.9. Thus, although Plaintiff arguably alleges sufficient facts concerning his purported performance, Defendants' purported breach, and damages, he fails to meet the first requirement for a breach a contract claim: that there is a contract in the first instance. *Coles*, 2 Cal.App.5th at 391. Further, to the extent Plaintiff's complaint can be understood to assert there existed some promise between the parties, it is not "clear and well defined" serving as an "offer, or that otherwise might be sufficient to give rise to a traditional contract supported by consideration." *Barnes*, 570 F.3d at 1108.[10]

In sum, Plaintiff fails to state a cognizable breach of contract claim against any named Defendant and Defendants' motion should be granted.

---

[10] *See also, e.g.*, *Ward v. New York University*, No. 99 CIV 8733 (RCC), 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000) (discussing breach of contract/promissory estoppel claim and Ward's reliance on "a number of the University's general policy statements and broad and unspecified procedures and guidelines as the specific services which were promised but not provided," the district court dismissed and held: "The promised services, as Ward categorizes them, actually are more akin to general statements of policy. In analogous cases, the services identified were specifically designated and discrete promises, relating to the incidents of the forthcoming education, such as the provision of a designated number of hours of instruction, state of the art facilities, and supervision by field supervisors [citations omitted]. Here, virtually all of the promised services that Ward cites, are broad pronouncements of the University's compliance with existing anti-discrimination laws, promising equitable treatment of all students. As such, they cannot form the basis for a breach of contract claim"); *Yue v. Miao*, No. 3:18-3467-MGL-PJG, 2019 WL 5872142, at *7 (D.S.C. June 27, 2019 ) (recommending dismissal of breach of contract claim that "website rule number two constituted binding browsewrap agreement" and finding "Yue fails to plead facts that plausibly show website rule number two could constitute a contract or a legally enforceable promise … this rule appears merely to be a statement of Miao's intent on how would moderate users' behaviors on the website. The rule creates no obligation on the part of Miao or the users, nor does it manifest any promise that is actionable in the event of a breach"), adopted 2019 WL 6130473 (D.S.C. Nov. 19, 2019), affirmed 852 Fed. App'x. 748 (4th Cir. 2021).

### E. Qualified Immunity

Given the foregoing findings, the undersigned does not address Defendants' argument concerning the defense of qualified immunity. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all").

### F. Granting Leave to Amend Would Be Futile

If a court finds that a complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. *Id*. at 1130-31. Here, Plaintiff was afforded a prior opportunity to cure the deficiencies in his pleading following Defendants' earlier motion to dismiss and has been unable to do so. (*See* Docs. 43 & 46.)

The undersigned also finds that while Plaintiff did not previously assert retaliation or breach of contract claims, as discussed above, granting Plaintiff leave to amend those claims would be futile. *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile"); *see also Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment"). Therefore, the undersigned will recommend Defendants' motion to dismiss be granted without leave to amend.

### VIII. CONCLUSION, ORDER AND RECOMMENDATIONS

Based on the foregoing, the Court **HEREBY ORDERS** that:

1. Plaintiff's pleadings filed July 11, 2025 (Docs. 60 & 61) are **STRICKEN**;

2. Plaintiff's requests for judicial notice filed June 3, 2025 (Doc. 57) are **DENIED**; and

3. Defendants' request for judicial notice filed June 17, 2025, is **GRANTED**.

Further, for the reasons stated above, the Court **HEREBY RECOMMENDS** that:

1. Defendants' motion to dismiss filed March 5, 2025 (Doc. 50) be **GRANTED**;

28

2.  Plaintiff's third amended complaint be **DISMISSED** without leave to amend for a failure to state a claim upon which relief can be granted; and

3.  This action be **DISMISSED** with prejudice and the case closed.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed fifteen (15) pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:  __**March 9, 2026**__                    ____/s/ *Sheila K. Oberto*____
                                                        UNITED STATES MAGISTRATE JUDGE

29